AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 1)*

UNITED STATES DISTRICT COURT
for the
Northern District of New York

FILED APR 19 2019 AT ___ O'CLOCK John M. Domurad, Clerk - Albany
U.S. DISTRICT COURT - N.D. OF N.Y.

In the Matter of the Search of )
*(Briefly describe the property to be searched )*
*or identify the person by name and address)* )   Case No. 1:19-mj-264-DJS
IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED WITH )
FACEBOOK USER ID 100014302633443 AND )
USERNAME ERIC BLEU THAT IS STORED )
AT PREMISES CONTROLLED BY )
FACEBOOK INC. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:
*(identify the person or describe the property to be searched and its given location)*:

Attachment A

located in the ___Northern___ District of ___New York___, there is now concealed
*(identify the person or describe the property to be seized)*:

Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2250 | Failure to Register as a sex offender |

The application is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days): ___
is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Imbugio, Deputy US Marshal
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant *(Page 2)*

Sworn to before me and signed in my presence.

Date: ~~Feb~~ April 19, 2019

_____
Judge's signature

City and State: Albany, NY

Hon. Daniel J. Stewart, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100014302633443 AND USERNAME ERIC BLEU THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Robert Imburgio, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with certain Facebook user IDs that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs, as more fully described in Attachment B.

2. I am a Criminal Investigator/Deputy United States Marshal with the United States Marshals Service, and I have been so employed for 9 years. I am currently assigned to the Albany, New York Division, and I conduct various criminal investigations including violations of the Adam Walsh Child Protection Act of 2006. In 2018, I attended Sex Offender Investigation Coordinator Basic training and am a collateral district Sex Offender Investigations

Coordinator. As a Deputy Marshal, I am authorized to seek and execute federal arrest and search warrants for Title 18 criminal offenses, including offenses related to the Sex Offender Registration and Notification Act ("SORNA"), and specifically those involving the interstate travel of persons required to register under SORNA, in violation of Title 18, United States Code, Section 2250. I have received training and instruction in conducting online SORNA investigations.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2250(a), Failure to Register as a Sex Offender, have been committed by Eric TOMPKINS. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. The USMS is conducting a criminal investigation into TOMPKINS' failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). On February 9, 2009, TOMPKINS was arrested by the Okanogan County Sheriff's Office in Washington and charged with Child Molestation First Degree, in violation of the Revised Code of Washington ("RCW") § 9A.44.083. On September 3, 2009, TOMPKINS was convicted of violating RCW 9A.44.089, Child Molestation Third Degree. A person is guilty of such an offense when he "has, or knowingly causes another person under the age of eighteen to have, sexual contact with another

2

who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." The victim in the case was allegedly ten years old and the defendant was 25 years old at the time of the offense. TOMPKINS was sentenced to a term of twelve (12) months Community Custody and required to register as a sex offender.

6. On July 23, 2009, TOMPKINS signed a plea agreement in the Superior Court of Washington for Okanogan County. As part of this plea, TOMPKINS signed and dated a "Statement of Defendant on Plea of Guilty to Sex Offense" and "Offender Registration Attachment" which included the advisement that he must register as a sex offender, and that "if I move to another state, or if I work, carry on a vocation, or attend school in another state I must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state." TOMPKINS signed the Statement indicating that he understood the requirements of the Statement and Attachment.

7. On September 3, 2009, TOMPKINS was sentenced in the Superior Court of Washington for Okanogan County to 12 months of Community Custody. As part of sentencing, TOMPKINS signed and dated a "Felony Judgement and Sentence" which included the provision, "[i]f you move to another state, or if you work, carry on a vocation, or attend school in another state you must register a new address, fingerprints, and photograph with the new state within 10 days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state."

3

8. From November 2009 through October 2011 TOMPKINS was compliant with registration requirements and submitted change of address registration updates to the Grant County Sheriff on five separate occasions.

9. On October 27, 2014, the Grant County Sheriff's Office became aware that TOMPKINS had failed to verify his address, or complete change of address notifications since his last registration update in 2011. The Grant County Sheriff's Office located TOMPKINS and provided a copy of the "Sex and Kidnapping Offender Notification of Registration and Requirements (Revised 7/22/2011)" RCW 9A.44.130. A Grant County Sheriff's Deputy reviewed the registration requirements with TOMPKINS and the document, which stated "[o]ffenders required to register in Washington, who move to another state, or who work, carry on a vocation, or attend school in another state shall register a new address, fingerprints, and photograph with the new state within three business days after establishing residence, or after beginning to work, carry on a vocation, or attend school in the new state," was signed by both the Grant County Deputy and TOMPKINS.

10. On August 11, 2016, the Grant County Sheriff's Office attempted to locate TOMPKINS at his registered address 726 Eastlake Ave (aka Main Ave), Soap Lake, Washington to conduct an annual address verification. The Grant County Sheriff's Office discovered that TOMPKINS was no longer residing at his registered address and had not completed a change of address notification as required. Between August 2016 and February 2017 the Grant County Sheriff's Office was unable locate TOMPKINS and an arrest warrant for TOMPKINS was issued by the Grant County Superior Court for violation of RCW 9A.44.132 Fail to Register as Sex Offender.

11. On February 27, 2017 TOMPKINS obtained employment at the Hoffman Car Wash, 5 Lowes Drive, Saratoga Springs, New York. According to Hoffman employee records, TOMPKINS was employed at the Hoffman Car Wash from February 27, 2017 through July 11, 2017. According to Hoffman employee records TOMPKINS listed his home address as a residence Clifton Park, New York.

12. On January 24, 2018 TOMPKINS obtained employment at Taco Bell, 811 Route 146, Clifton Park, New York. According to Taco Bell employee records, TOMPKINS was employed at this location from January 24, 2018 through August 14, 2018. According to Taco Bell employee records TOMPKINS listed his home address as a residence in Clifton Park, New York.

13. On October 19, 2018, a due diligence search was performed by investigators with the New York State Division of Criminal Justice Services (NYDCJS) and determined TOMPKINS was not registered as a sex offender in New York State. Investigators have continued to conduct searches of NYDCJS records regularly since October 19, 2018, including on March 13, 2019, and have determined that TOMPKINS has not registered as a sex offender in New York State.

14. On March 18, 2019, based on the facts provided in an affidavit, including the facts set forth above, the Honorable Daniel J. Stewart signed a Criminal Complaint accusing TOMPKINS of violating 18 U.S.C. 2250(a), failure to register and update a sex offender registration as required by the Sex Offender Registration and Notification Act, and a warrant for TOMPKINS's arrest. On March 28, 2019, TOMPKINS was arrested.

15. A review of publicly-available information on Facebook reveals an account in the name "Eric Bleu," that contains "selfie" photographs of Tompkins, including photographs taken in front of what appears to be the residence where TOMPKINS stayed for a period of time in

5

Clifton Park, New York. Based on the photographs on the account, this account is believed to be used by TOMPKINS.

16. As of April 15, 2019, the Facebook account with User ID 100014302633443 and Username Eric Bleu is active and publicly accessible through Facebook.

17. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

18. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

19. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

20.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

21.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

22.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a

7

user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

23. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

24. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

25. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

26. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

27. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

28. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

29. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

30. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

31. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

32. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

9

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

33. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

34. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user

10

attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.    Based on the forgoing, I request that the Court issue the proposed search warrant.

39.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

40.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

_____
Robert Imburgio
Criminal Investigator / Deputy Marshal
U.S. Marshals Service

Subscribed and sworn to before me on April 19, 2019

_____
Hon. Daniel J. Stewart
U.S. Magistrate Judge
Northern District of New York

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook User ID 100014302633443 and Username ERIC BLEU, that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A, from October 1, 2014 to present, including:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

2

|     |     |
| --- | --- |
|     | gifts; pokes; tags; and information about the user's access and use of Facebook applications; |
| (e) | All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests; |
| (f) | All "check ins" and other location information; |
| (g) | All IP logs, including all records of the IP addresses that logged into the account; |
| (h) | All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked"; |
| (i) | All information about the Facebook pages that the account is or was a "fan" of; |
| (j) | All past and present lists of friends created by the account; |
| (k) | All records of Facebook searches performed by the account; |
| (l) | All information about the user's access and use of Facebook Marketplace; |
| (m) | The types of service utilized by the user; |
| (n) | The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number); |
| (o) | All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account; |
| (p) | All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken. |

3

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2250(a) involving Eric TOMPKINS, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) TOMPKINS' residence.

(b) TOMPKINS' registration as a sex offender, including in New York and Washington.

(c) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(d) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).